IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM T. DAVIS ) | |
| ) | |
| v. ) | NO. 3:07-0713 |
| ) | |
| CITY OF MURFREESBORO, et al. ) | |

**M E M O R A N D U M**

Pursuant to the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties in this action have consented to have the Magistrate Judge conduct any and all further proceedings in the action, including the entry of a final judgment. See Docket Entry Nos. 11 and 15.

**I. BACKGROUND**

The plaintiff filed this action on July 6, 2007, asserting civil rights claims under 42 U.S.C. § 1983, and seeking five million dollars in damages. Named as defendants were the City of Murfreesboro, Tennessee ("City"); the City of Murfreesboro Building and Codes Department ("Building Codes Department"); Betts Barbier Nixon ("Nixon"), the Director of the Building Codes Department; and Monty Kapavik ("Kapavik"), an inspector with the Building Codes Department.

The plaintiff alleges that, in March 2006, he "began to be contacted by [the Building Codes Department and/or Kapavik] demanding an inspection of [his] condominium," see Complaint at ¶ 15, and that the Building Codes Department, under the direction of Defendant Nixon, obtained an administrative warrant to search his condominium on July 2, 2006. Id. at ¶ 18. The plaintiff asserts that Kapavik appeared unannounced at his condominium on July 12, 2006, demanding entry to inspect the property and that, when he told Kapavik that he wanted his attorney present during the search, Kapavik threatened him with a criminal misdemeanor citation. Id. at ¶¶ 19-20. The plaintiff asserts that he permitted Kapavik to enter the condominium because he feared potential repercussions if he did not. Id. at ¶ 21. On July 26, 2006, Kapavik issued to the plaintiff a Notice

to Repair, which the plaintiff contends grossly exaggerated the alleged deficient conditions of the property which were ordered to be repaired. Id. at ¶¶ 22-23.

The plaintiff alleges that the search of his property and resulting repair notice were acts of retaliation against him because he had pursued prior lawsuits against various branches of the City[1] and were an attempt to prevent him from continuing to exercise his constitutionally protected rights in future court proceedings against the City. He alleges that the City and the Building Codes Department have adopted and permitted a policy of retaliation against him because of his exercise of his First Amendment rights. Id. at ¶¶ 24-43.

By Order entered August 21, 2007 (Docket Entry No. 13), the Building Codes Department was dismissed from the action, and by a Joint Stipulation of Dismissal With Prejudice filed on March 8, 2008 (Docket Entry No. 26), and Order entered July 7, 2008 (Docket Entry No. 37), Defendants Betts Barbier Nixon and Monty Kapavik were also dismissed from the action in both their official and individual capacities, leaving only the City as the defendant. By Order entered September 30, 2008 (Docket Entry No. 41), any claims arising prior to July 6, 2006, were dismissed as untimely.

Presently pending before the Court is the City's motion for summary judgment (Docket Entry No. 29).

**II. MOTION FOR SUMMARY JUDGMENT, RESPONSE, and REPLY**

The defendant contends that summary judgment should be granted as a matter of law because the evidence before the Court fails to support the plaintiff's claim. Specifically, the defendant

---

[1] The plaintiff's prior lawsuits were based on events surrounding a search of his residence in December 2003, and subsequent civil and criminal proceedings which were brought against him as a result of the search. He alleges that he filed a civil lawsuit in December 2004, against the City Police Department, individual police officers and "multiple Rutherford County agencies and employees," although that lawsuit did not name any of the defendants in the instant action. See Complaint, at ¶¶ 8–9. He alleges that the lawsuit was re-filed a second time in December 2005. Id. at ¶ 11. The lawsuit was apparently dismissed with prejudice against the plaintiff on June 5, 2006. Id. at 16.

2

argues that: 1) there is no evidence that a custom or policy of the City was the driving force behind any alleged deprivation of the plaintiff's constitutional rights; 2) there is no evidence that an adverse action was taken against the plaintiff which could violate his constitutional rights; and 3) there is no evidence supporting a conclusion that any action taken by the defendant was motivated in any way by a retaliatory animus. In support of its motion, the defendant relies upon excerpts from the transcript of the plaintiff's deposition. See Docket Entry No. 30-1.

In response, the plaintiff argues that the City, through the Building Codes Department and its employees, adopted and permitted a policy of retaliation against him because of the exercise of his First Amendment rights. The plaintiff asserts that when Nixon obtained the administrative search warrant, her actions were attributable to the City because she was a policymaker within the Building Codes Department. The plaintiff also argues that circumstantial evidence supports his allegation that the enforcement action taken by the Building Codes Department was motivated by a desire to retaliate against him because of his prior lawsuits involving the City of Murfreesboro. The plaintiff points to three specific events which he contends supports his claim: 1) "[a]fter taking no action toward [his] property for over five months, within two weeks of [the plaintiff] mailing summonses to [the City] he was contacted by the Building Codes Department with a demand that he allow entry for a property inspection," see Plaintiff's Response (Docket Entry No. 34), at 6-7; 2) Kapavik threatened the plaintiff with a criminal misdemeanor if he did not permit Kapavik entry into his house; and 3) the Building Codes Department has issued only one administrative warrant in its history.

The plaintiff also contends that Nixon testified in her deposition that the Building Codes Department and the City of Murfreesboro Police Department often work closely together and that the Police Department often informs the Building Codes Department of complaints about building codes violations. The plaintiff argues that "it is very possible, in fact even likely, that such communication regarding policy decision affecting the Plaintiff occurred as well." See Plaintiff's Response (Docket Entry No. 34) at 9.

3

The City replies by maintaining that Nixon was not a final policymaker regarding either the administrative search warrant or the notice to repair issued to the plaintiff because her actions with respect to both matters were not final and were subject to review. See Docket Entry No. 36. The City also disputes that the circumstantial evidence relied on by the plaintiff is sufficient to support a constitutional claim of retaliation. Id.

### III. STANDARD OF REVIEW

Summary judgment is warranted in favor of one party if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Rule 56(c) of the Federal Rules of Civil Procedure; Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The ultimate question to be addressed is whether there are genuine issues of disputed material fact. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If genuine issues of material fact do not exist, summary judgment is appropriate.

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. However, the nonmoving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting her claims and establishing the existence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 324; Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The nonmoving party "is required to present some

4

significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171, 1174-75 (6th Cir. 1997). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Liberty Lobby, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative" or is not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Liberty Lobby, 477 U.S. at 249-52.

### III. ANALYSIS

The plaintiff alleges that he was retaliated against in violation of the First Amendment because of his prior lawsuit against the City and its employees. There are three elements to a retaliation claim:

(1) the plaintiff was engaged in a constitutionally protected activity;

(2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and

(3) there is a causal connection between the protected activity and the adverse action - that is, the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. See Jenkins v. Rock Hill Local School Dist., 513 F.3d 580, 585-86 (6th Cir. 2008); Scarbrough v. Morgan County Bd. of Educ., 470 F.3d 250, 255 (6th Cir. 2006); Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998). If the plaintiff meets this burden, the burden of production shifts to the defendant, Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999) (en banc), but if the defendant can show it would have taken the same action in the absence of the protected activity, it is entitled to summary judgment. Bloch, supra.

The Court has reviewed the parties' filings and the evidence before the Court and finds that summary judgment should be granted to the defendant. Assuming for the purposes of deciding the

5

motion for summary judgment that the plaintiff satisfies the first two elements of his case, his claim warrants dismissal because it fails on the final element. Even when the evidence before the Court is viewed in the light most favorable to the plaintiff, there is simply insufficient evidence before the Court showing the existence of a causal connection between the plaintiff's pursuit of a lawsuit against the City and the enforcement action taken against him by the Building Codes Department. No reasonable jury could find in favor of the plaintiff if this claim proceeded to trial.

The undisputed evidence before the Court shows that the search of the plaintiff's property conducted by Kapavik on July 12, 2006, was merely one of the more recent occurrences in a string of events which began in December 2003, when the plaintiff's property was searched and he was given an order by the Building Codes Department to remedy certain violations. See Affidavit of Kelley Blevins Baker (Docket Entry No. 36-1), at Exhibit B. In an effort to ensure compliance with the order, the Building Codes Department made numerous unsuccessful attempts to arrange a re-inspection of the plaintiff's property. Id. The first unsuccessful attempt occurred on February 24, 2004, and during the next two and a half years, the Building Codes Department repeatedly, but unsuccessfully, tried to secure the plaintiff's consent to re-inspect his property. See Affidavit of Baker, at ¶ 7 and Exhibits B and C.[2]

The plaintiff's intimation that he began to be contacted by the City, the Building Codes Department, and/or Kapavik about inspection of his property only after he mailed summonses for his civil lawsuit in March 2006, see Complaint, at ¶ 15, simply flies in the face of undisputed facts. The undisputed facts show that the first attempt by the City to re-inspect the plaintiff's property occurred several months prior to the plaintiff's initiation of his civil lawsuit and more than two years before the mailing of the summonses which he asserts in his complaint was the triggering event for the alleged retaliation. In fact, in October 2004, approximately two months before the plaintiff even

---

[2] The reason given by the plaintiff and/or his attorneys for refusing to consent to a follow-up inspection during 2004 and most of 2005, was that the plaintiff was challenging, in the state criminal case brought against him, the lawfulness of the initial search of his property and the resulting repair order and did not want the re-inspection conducted while that issue remained pending. See Affidavit of Baker, at ¶ 7.

6

initiated his civil lawsuit, the City had warned the plaintiff about the possibility that an administrative inspection warrant would be issued if he did not comply with requests to schedule a re-inspection. See Affidavit of Baker, at Exhibit B.

The fact that a re-inspection of the plaintiff's property did not occur until July 2006, is simply not evidence of a retaliatory animus on the part of the City. Instead, the only reasonable view of this fact is that it is evidence that the plaintiff was successful in his efforts at thwarting a re-inspection of his property for several years. The temporal connection between the July 2006, re-inspection and the service of summonses in his civil action in March 2006, fails to satisfy the causal connection element of the plaintiff's retaliation claim.

Similarly, the plaintiff's use of other types of circumstantial evidence fails to raise genuine issues of material fact sufficient to warrant that this claim proceed to trial.

The plaintiff argues that a retaliatory animus can be proven based on the fact that the Building Codes Department had not previously obtained an administrative inspection warrant for anyone other than himself. However, the defendant has pointed out without rebuttal by the plaintiff that an administrative inspection warrant was not available under Tennessee law prior to June 11, 2003. See Tenn. Code. Ann. § 68-120-117. Furthermore, the plaintiff has not shown that the fact that an administrative inspection warrant was used on only one occasion can be viewed as evidence of any retaliatory animus. The plaintiff has offered no evidence of any situation involving any other individual with whom the plaintiff was similarly situated but for whom an administrative inspection warrant was not obtained and used by the Building Codes Department. Without the submission of such evidence, the only reasonable conclusion for why an administrative inspection warrant was used only with respect to the plaintiff is that the facts of the plaintiff's situation presented a unique situation in which such an action was necessary.

The plaintiff also contends that Kapavik threatened him with a criminal misdemeanor if he did not agree to permit the inspection to occur without the plaintiff's attorney present. Even if true,

7

this fact fails to offer any support for the showing of a causal connection between the plaintiff's protected activity and the alleged adverse action.

The plaintiff further argues that evidence that the Building Codes Department and the City's police department had a close working relationship makes it "very possible, in fact even likely" that communications regarding a desire to retaliate against the plaintiff occurred between individuals in the two departments. See Plaintiff's Response (Docket Entry No. 34), at 9-10. Such an argument is entirely unpersuasive and fails to raise a genuine issue of material fact. First, there is nothing remarkable about the fact that two municipal departments such as a police department and a building codes department either communicate regularly or have a close working relationship. Second, in the absence of actual evidence that anyone within these two departments spoke with each other about the plaintiff, the plaintiff's assertion that he was a topic of discussion between the two departments, let alone that retaliation against him was a topic of discussion, is pure speculation and conjecture. Such evidence does not support a constitutional claim under Section 1983 and fails to raise a genuine issue of material fact. See Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986); Smith v. Rose, 760 F.2d 102, 106 (6th Cir. 1985).

Finally, the plaintiff asserts that Kapavik exaggerated the extent of the alleged deficient conditions of the plaintiff's property after conducting the re-inspection in July 2006, as evidenced by the opinions of two individuals whom the plaintiff had view his property the next day and by the opinion of a home inspector whom the plaintiff had evaluate the property shortly after the inspection. See Plaintiff's Response, Docket Entry No. 34 at 8.

While this evidence may create a disputed question of fact, this dispute fails to warrant the denial of summary judgment because it fails to raise a genuine issue of material fact. Given the lack of any other evidence supporting the plaintiff's claim of retaliation and the overwhelming evidence favoring the defendant, even if this factual dispute were resolved in favor of the plaintiff, no

8

reasonable jury could find, based on only this evidence, that a causal connection existed between the alleged adverse action and the plaintiff's protected activity.[3]

The Court's finding that insufficient evidence exists supporting a conclusion that the plaintiff suffered a constitutional violation at the hands of any employee of the City makes it unnecessary to review the issue of municipal liability because there can be no municipal liability absent an actual constitutional violation at the hands of the municipal employee. See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of [an] individual police officer, the fact that [municipal policy or custom] might have authorized [a constitutional violation] is quite beside the point."); Floyd v. City of Detroit, 518 F.3d 398, 411 (6th Cir. 2008) ("Where a court determines that no violation of the plaintiff's constitutional rights occurred, obviously the governmental entity cannot be liable ... for developing a [policy or] custom that led to a constitutional violation.").

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the motion for summary judgment filed by the defendant should be granted and this action dismissed.

An appropriate order will enter.

JULIET GRIFFIN
United States Magistrate Judge

---

[3] Further, the undisputed evidence shows that, although the plaintiff appealed the repair order issued by Kapavik and was granted a re-inspection at which the plaintiff, his attorney, and an impartial building inspector were to be present, the re-inspection was not conducted within the required time frame and the appeal was denied. See Affidavit of Baker, at Exhibit A.

9